**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTOPHER SAMUEL KLINE<br>332 Gerard Avenue<br>Elkins Park, PA 19027 | : | CIVIL ACTION |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | CASE NO.: |
| v. | : | |
| | : | |
| US FACILITIES INC. | : | |
| 1835 Market Street | : | **JURY TRIAL DEMANDED** |
| Philadelphia, PA 19103 | : | |
| and | : | |
| JOSEPH RIVERA | : | |
| 1835 Market Street | : | |
| Philadelphia, PA 19103 | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CIVIL ACTION COMPLAINT**

Christopher Samuel Kline (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.      This action has been initiated by Plaintiff against US Facilities Inc. and Joseph Rivera (hereinafter referred to as "Defendants") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII - 42 U.S.C. §§ 2000, *et. seq*.), 42 U.S.C. § 1981, the Family Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601, et. seq.), the Americans with Disabilities Act ("ADA" - 42 USC §§12101 *et. seq*), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance (PFPO).[1] Plaintiff asserts, *inter alia*, that he experienced unlawful

---

[1] Plaintiff's claims under the PHRA and PFPO are referenced herein for notice purposes. He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file his lawsuit in advance of same because of the date of issuance of her federal right-to-sue letter under the ADA and Title VII. Plaintiff's PHRA and PFPO claims however will mirror identically his federal claims under the ADA and Title VII.

1

workplace discrimination and retaliation, culminating in his termination from Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## **JURISDICTION AND VENUE**

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for various civil rights violations under Title VII, Section 1981, the FMLA and the ADA. There lies supplemental and/or ancillary jurisdiction over Plaintiff's state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

3.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit under within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

6.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.    Plaintiff is an adult Caucasian male, with an address as set forth in the caption.

8.    US Facilities Inc. ("Defendant US") is an infrastructure service provider that offers, among other services, HVAC, electrical, plumbing, and construction support to a variety of government, private, and commercial clients.

9.    Joseph Rivera ("Defendant Rivera") is a high-level manager of Defendant US who had control over the terms and conditions of Plaintiff's employment, including but not limited to supervision, discipline, hiring and firing.

10.    At all times relevant herein, Defendants acted by and through their agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

11.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12.    Plaintiff is a 53-year-old Caucasian male.

13.    Plaintiff has more than 30 years of experience in facility operations, project management, and security integration.

14.    Plaintiff was first hired by Defendant US in or about 2012 and in total worked for Defendant US for various periods over 13 years.

15.    While employed with Defendant US, Plaintiff held the titles of Buildings Manager and Security Integration Specialist.

16.    Plaintiff was well-qualified for the position because he possessed the relevant skill and experience for it.

17.    Plaintiff was supervised by Craig Howard ("Howard"- African American)(Assistant Project Manager) and Defendant Joseph Rivera (Hispanic)(Project Manager).

18.    Plaintiff has suffered from heart-related medical conditions.

19.    These medical conditions affect and interfere with Plaintiff's bodily functions and daily activities, including cardiovascular functioning, breathing, physical endurance, focus, blood circulation and, at times, working.

20.    Plaintiff has obtained ongoing medical treatment for these conditions, including visits to the doctor, medication, hospitalizations, and an open-heart double bypass surgery.

21.    In or about late February or early March of 2025, Plaintiff was required to undergo open heart surgery for a double bypass due to his heart conditions.

22.    In or about late February of 2025, prior to surgery, Plaintiff spoke with Defendant Rivera and Howard about his medical conditions and also informed them that he needed time off to undergo bypass surgery.

23.    Plaintiff also requested FMLA leave from Defendant US's human resources department and submitted the required FMLA documents to support his need for leave.

24.    On or about February 27, 2025, Plaintiff commenced a medical leave of absence/FMLA leave.

25.    In the one year preceding this medical leave, Plaintiff worked at least 1,250 hours with Defendants.

4

26.     Plaintiff returned from medical leave in or around May of 2025, following an approximate 10-week leave period.

27.     Upon his return from FMLA/medical leave, Plaintiff was subjected to demeaning, offensive, and humiliating comments/treatment from Defendants regarding his health conditions and lifestyle choices on a regular basis.

28.     For example, Defendant Rivera frequently scoffed, shook his head, laughed, and even verbally chastised Plaintiff when he saw Plaintiff eating anything Defendant Rivera deemed "unhealthy."

29.     On more than one occasion, Defendant Rivera disparaged Plaintiff for his medical conditions, telling Plaintiff not to "fuck himself up and get another heart attack" by eating certain food or that Plaintiff will "keep having heart attacks with how you fucking eat."

30.     In another instance in or about August of 2025 when Plaintiff was walking to a Wawa for lunch, Defendant Rivera made eye contact with him, scoffed, and shook his head disapprovingly when he realized Plaintiff was entering the store.

31.     When Plaintiff returned and began eating the sandwich he purchased for lunch, Defendant Rivera went out of his way to condescendingly chastise Plaintiff by stating "I can't believe you're eating like that after you just had a heart attack."

32.     When Plaintiff stated that he only eats whole wheat, Defendant Rivera sarcastically replied, "don't eat bread." Defendant Rivera's comments became so regular that Plaintiff could often predict when Rivera would make a humiliating remark towards him.

33.     In another instance, during the summer of 2025, Plaintiff's spouse met him at his job site so they could eat lunch together. Plaintiff and his wife sat near the jobsite, eating pizza.

34.     Plaintiff's wife finished eating her slice of pizza. Plaintiff turned to his wife, stating "If Rivera sees me, I'm sure he'll have something to say."

35.     Moments later, Defendant Rivera appeared, threw up his hands theatrically and exclaimed "Pizza! Right after a heart attack he's eating pizza."

36.     Not only were Defendant Rivera's comments wildly inappropriate, but also humiliating to Plaintiff, as he was once again admonished for his medical conditions, this time in front of his spouse.

37.     Throughout the rest of 2025, Plaintiff continued to suffer from his heart-related conditions.

38.     Plaintiff was working with his physician to treat, among other things, pericarditis, or the inflammation of the lining around his heart.

39.     From approximately June of 2025 until his termination in September of 2025, Plaintiff was attending physician's appointments, taking medication, and infrequently staying overnight in the hospital.

40.     On infrequent occasions, Plaintiff was also required to miss work due to hospital stays. Plaintiff continued to keep Defendants informed and up to date with any medical procedures he required and any time he needed to request off.

41.     Despite Plaintiff's diligence in informing Defendants of his health conditions and expected absences, Plaintiff continued to face harassment at work, predominantly from Defendant Rivera.

42.     As stated previously, throughout the summer of 2025, Defendant Rivera continued to make demeaning comments to Plaintiff, again telling Plaintiff that he "better not fuck himself up and get another heart attack."

6

43.    In or about July of 2025, Plaintiff was unexpectedly hospitalized again due to his heart conditions and was forced to miss work.

44.    When he informed Defendant Rivera about this medical event, Rivera sarcastically told Plaintiff "what did I say before," whereby Rivera was, in essence, blaming Plaintiff for the additional heart-related complications.

45.    Defendant Rivera continued to make derogatory comments to Plaintiff about his medical conditions until the date of Plaintiff's unlawful termination (in September 2025).

46.    On or about September 12, 2025, Plaintiff was working at the Philadelphia Municipal Services Building located at 1401 John F. Kennedy Boulevard.

47.    This building was Plaintiff's primary place of work.

48.    While working, Plaintiff noticed that the building entrance facing Arch Street had been propped open by a sign, leaving the door unsecured and the building exposed to the general public.

49.    Plaintiff, having worked in this building almost exclusively, knew this to be a violation of the building's security policy and posed a serious safety risk to those inside the building.

50.    Additionally, at this time of day, Plaintiff knew that this door can only be used as an exit, not an entrance.

51.    For that reason, Plaintiff simply went to remove the sign and closed the Arch Street door.

52.    At this same time, a black female ("Female") approached the door and attempted to enter the building through the Arch-street door.

53. Plaintiff informed Female that this was not in fact an entrance, only an exit, and that she had to go to John F. Kennedy Boulevard in order to enter the building.

54. Female immediately became aggressive and vulgar, yelling "fuck you" at Plaintiff, telling Plaintiff to "go fuck yourself", and shouting vulgar and racist insults at Plaintiff, including calling Plaintiff a ***"white nigger bitch"*** and a ***"Santa-Claus-looking motherfucker."***

55. Female eventually left to enter the building through the John F Kennedy entrance.

56. Plaintiff, in response to being verbally berated, informed security of Female's presence and that she may be a security issue while entering.

57. Sure enough, when Female attempted to enter the building through the John F Kennedy entrance, she claimed that she did not have her City ID and was instead being let in by a supervisor.

58. Shortly thereafter, Female's supervisor arrived in the lobby and swiped Female into the building.

59. During his interactions with Female, Plaintiff never swore, used vulgar language or engaged with Female physically in any way.

60. Shortly after this incident, Plaintiff reported the issue, including Female's use of racially charged language, to Defendant Rivera and explained that he felt like he was mistreated because of his race.

61. In response, Defendant Rivera brushed off Plaintiff's complaint and said "we'll just deal with it on Monday."

62. Despite Plaintiff's complaint of race discrimination (as set forth herein) to Defendant Rivera, Defendants did not investigate or otherwise attempt to resolve Plaintiff's concerns.

63.     On or about September 15, 2025, three (3) days after Plaintiff's complaint of race discrimination and shortly after Rivera's ongoing derogatory comments about Plaintiff's medical conditions, Plaintiff was terminated by Defendants.

64.     Plaintiff was informed of his termination by Defendant Rivera and Human Resources Officer Susan Laramore-Johnson ("Johnson"), an Hispanic female.

65.     Defendant Rivera and Johnson cited Plaintiff's alleged "improper handling" of the above-referenced incident as cause for his termination.

66.     However, prior to his termination, Plaintiff was never interviewed about said incident, nor was he given any verbal or written warnings regarding said incident.

67.     In terminating Plaintiff for conduct he did not engage in without first issuing him any discipline, Defendants failed to comply with their own disciplinary policy.

68.     Defendants have also treated non-white and non-disabled employees much more favorably than Plaintiff, despite their violations of company policies.

69.     For example, Howard was caught engaging in sexual acts in the workplace and/or violating Defendant's code of conduct but was not terminated.  Howard is not white and, to Plaintiff's knowledge, not disabled.

70.     At the time of his termination, Plaintiff was offered an unsolicited severance agreement which required Plaintiff to waive his legal claims.

71.     Upon information and belief, Defendant does not have any policy which requires severance to be offered to a terminated employee.[2]

---

[2] An offer of severance can constitute evidence of pretext.  *See Staffieri v. Northwestern Human Servs*., 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013)(an employer who offered severance at the time of termination when policies did not require upon condition of waiving FMLA claim supported finding of pretext in wrongful termination claim, among other evidence); *Bartlett v. NIBCO Inc*., 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)(finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was retaliatory"); *Karl v. City of Mountlake Terrace*, 2011 U.S.

72.    After his termination, Plaintiff was replaced by a non-white and non-disabled employee.

73.    Based on the foregoing, Plaintiff believes and avers that he was ultimately terminated from his employment with Defendants in violation of state and federal law.

**COUNT I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Hostile Work Environment)**
**- Against Defendant US -**

74.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

75.    Plaintiff suffers from qualifying disabilities under the ADA.

76.    Plaintiff informed Defendants about these disabilities and requested accommodations.

77.    Defendants treated Plaintiff rudely, disrespectfully, and frequently humiliated him as a result of his medical conditions.

78.    Defendants' discriminatory conduct occurred on a repeated basis and continued over the final four months of Plaintiff's employment.

79.    Plaintiff was offended, humiliated and hurt by Defendants' discriminatory treatment of him, as would any reasonable person.

80.    Defendants were aware of this discriminatory treatment and failed to take any remedial action to investigate or address it.

---

Dist. LEXIS 59085 (W.D. Wash. 2011)(severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by Fed.R.Evid. 408).

81.     Instead, shortly after Plaintiff disclosed his medical conditions to Defendants and requested accommodations, he was terminated.

82.     Plaintiff's actual and/or perceived disabilities and/or requests for accommodations were a motivating or determinative factor in Defendants' decision to terminate his employment.

83.     Plaintiff was subjected to discrimination and a hostile work environment through disparate treatment due to his aforesaid health conditions and requested accommodations.

84.     The foregoing conduct constitutes violations of the ADA.

**COUNT II**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Retaliation & Interference)**
**- Against Both Defendants –**

85.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

86.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

87.     Plaintiff requested leave for his own serious medical conditions from Defendants, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

88.     Plaintiff had at least 1,250 hours of service with Defendant US during the year preceding his requests for FMLA leave.

89.     Defendant US is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

90.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

91.     Plaintiff requested FMLA-qualifying leave in close temporal proximity and prior to his termination.

92.     Defendants committed interference and retaliation violations of the FMLA by: (1) disciplining and/or terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to discipline and/or terminate him; (3) disciplining and/or terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-qualifying leave in the future; (4) failing to properly notify Plaintiff about his FMLA rights and/or failing to properly designate his absences as FMLA-qualifying; (5) engaging in conduct that would dissuade a reasonable person from exercising their FMLA rights.

93.     Defendant Rivera is individually liable for the foregoing FMLA violations because he is (a) a high-level manager of Defendant who controlled the terms and conditions of Plaintiff's employment and (b) caused, participated in and/or acted directly or indirectly in the interest of Defendant US in violating the FMLA.

94.     These actions as aforesaid constitute violations of the FMLA.

### COUNT III
### Violations of Title VII of the Civil Rights Act of 1964
### (Retaliation)
### - Against Defendant US -

95.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

96.     Plaintiff's complaints of discrimination were a motivating and/or determinative factor in Defendants' decision to terminate his employment.

97.     This conduct constitutes a violation of Title VII.

**COUNT IV**
**Violations of 42 U.S.C. § 1981**
**(Retaliation)**
**- Against Both Defendants -**

98.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

99.     Defendants' conduct, as aforesaid, also constitutes a violation of 42 U.S.C. § 1981.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B.      Plaintiff is to be awarded liquidated and punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E.      Plaintiff is to be given a jury trial as demanded in the caption of the instant Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____

Ari R. Karpf, Esq. (91538)
Jeremy M. Cerutti, Esq. (200276)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com
jeremy@karpf-law.com

Dated: June 30, 2026

14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Christopher Samuel Kline | : | CIVIL ACTION |
| v. | : | |
| | : | |
| US Facilities Inc., et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.            (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.            (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.            (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)            (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.        (x )

| 6/30/2026 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

10/2024

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM

Place of Accident, Incident, or Transaction: <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

### ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

Case 2:26-cv-04538-CFK Document 1 Filed 06/30/26 Page 17 of 17

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

KLINE, CHRISTOPHER SAMUEL

**(b)** County of Residence of First Listed Plaintiff  Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

US FACILITIES INC., ET AL.

County of Residence of First Listed Defendant  Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** ☐ 540 Mandamus & Other | **IMMIGRATION** ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601); Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of the ADA, FMLA, Title VII, Section 1981, PHRA and PFPO.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE  6/30/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____